Nos. 19-35802 x 19-35822

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GLORIA MITCHELL,

Cross-Appellant/Appellee,

v.

WINCO FOODS, LLC,

Appellee/Cross-Appellant.

On Appeal from the United States District Court
For the District of Idaho,
Case No. 1:16-cv-00076-BLW
The Honorable B. Lynn Winmill, United States District Judge.

THIRD BRIEF ON CROSS-APPEAL FOR
CROSS-APPELLANT/APPELLEE GLORIA MITCHELL

Eric B. Swartz
(eric@jonesandswartzlaw.com)
JONES & SWARTZ PLLC
623 W Hays Street
Boise, Idaho 83702
Telephone: (208) 489-8989

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue
Ste. 300
Denver, Colorado 80210

*Attorneys for Cross-Appellant/Appellee Gloria Mitchell*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ............................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................. 3

SUMMARY OF THE ARGUMENT ..................................................... 3

ARGUMENT ...................................................................................... 4

I.      UNDER THE NINTH CIRCUIT'S RECENT *WALKER* DECISION, WINCO'S DISCLOSURE CONTAINS EXTRANEOUS AND OVERSHADOWING INFORMATION THAT VIOLATES THE FCRA'S STAND-ALONE DISCLOSURE REQUIREMENT. ....................................................................... 4

      A.    The Investigative Report Details Included In WinCo's Disclosure Form Exceed The Limited Disclosure Permitted By *Walker*. ........................................................................... 5

      B.    WinCo's Form Contains The Same Extraneous Disclosure That Supported The Court's Conclusion That The *Walker* Form Was Unlawful. ........................................................... 11

II.     WINCO'S VIOLATION OF THE STAND-ALONE DISCLOSURE REQUIREMENT WAS WILLFUL ................................................. 15

CONCLUSION .................................................................................. 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010)............... 17, 20

*Gilberg v. Cal. Check Cashing Stores, LLC*,
    913 F.3d 1169 (9th Cir. 2019) ............................................... *passim*

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ................................. 16

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017).......... 6, 13, 16, 17–18, 20

*Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020) ............ *passim*

## STATUTES, RULES, AND OTHER SOURCES

Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* .......................... *passim*

## INTRODUCTION

Cross-Appellant/Appellee Gloria Mitchell ("Mitchell") hereby responds to Appellee/Cross-Appellant WinCo Foods, LLC's ("WinCo") Second Brief on Cross-Appeal. In its brief, WinCo spends little time responding to Mitchell's First Brief, leaving her with little opportunity for reply. However, the issues raised by WinCo on cross-appeal are not substantially different and, in fact, overlap with the issue raised by Mitchell. Accordingly, Mitchell will address the issues before the Court simultaneously.

As stated in her First Brief on Cross-Appeal, Mitchell appeals the District Court's judgment of dismissal and argues that the court below erred in concluding that WinCo's violation of the FCRA was not willful. In its Second Brief, WinCo raises two contrary arguments. First, WinCo contends that it did not violate the FCRA, relying heavily on this Court's recent opinion issued in the *Walker* case. Second, WinCo asks the Court to affirm the finding that it did not willfully violate the FCRA, either because it did not violate the law or because the law was not clearly established when the violation occurred.

WinCo's belief that the *Walker* decision completely shields its disclosure from reproach is misplaced—in reality, *Walker* supports

Mitchell's position. While the Court did hold that a limited disclosure and "very brief" description of investigative reports could be included, WinCo's form is overshadowed by investigative report details that distract from the disclosure. Further, WinCo's disclosure form contains additional extraneous information that is nearly identical to language that the *Walker* Court held violated the FCRA.

Likewise, Mitchell maintains that WinCo's violation was willful, and the lower court erred in finding otherwise. The statute itself requires that the form consist solely of the consumer report disclosure— extraneous information violates the stand-alone disclosure requirement. WinCo should not be excused from liability for testing the boundaries of the law simply because its inclusions of choice had not yet been explicitly reviewed by a court.

Accordingly, the District Court's orders partially granting WinCo's motion to dismiss and dismissing Mitchell's claims should be reversed, and the case should be remanded to proceed beyond the initial pleadings.

## ISSUES PRESENTED FOR REVIEW

Mitchell is dissatisfied with WinCo's statement of the issues presented for review on cross-appeal and hereby restates the issues as follows:

1. Whether WinCo violated the FCRA's stand-alone disclosure requirement by including extraneous information in its form and otherwise overshadowing the disclosure with investigative report details.

2. Whether WinCo willfully violated the FCRA by providing a form that fails to consist solely of the required disclosure.

## SUMMARY OF THE ARGUMENT

I.    WinCo's disclosure form provided to Mitchell and other employees and applicants contains extraneous information that violates the FCRA's stand-alone disclosure requirement. While the Court's recently-issued opinion in *Walker* permits inclusion of a limited investigative report disclosure and very brief description of investigative consumer reports, it does not change the analysis here. WinCo's form is overshadowed by investigative report details, which exceed the "very brief" allowance permitted by *Walker*. Further, WinCo's form includes a disclosure about the right to obtain

3

information about the investigation—the same kind of extraneous inclusion that the Court found violated the statutory stand-alone disclosure requirement in *Walker*. The District Court's conclusion that WinCo violated the Act thus stands correct.

II.     As explained in Mitchell's First Brief, WinCo's violation of the FCRA was willful, and the District Court erred in concluding otherwise. The statutory requirement—that a consumer report disclosure must "consist solely of" of the disclosure—is unambiguous and is not subject to a range of plausible interpretations. WinCo's interpretation of this language is objectively unreasonable, as the word "solely" does not contemplate overshadowing the report with extraneous details. WinCo acted recklessly under the Supreme Court's *Safeco* standard, and its violation of the FCRA is thus willful.

## ARGUMENT

I.    **UNDER THE NINTH CIRCUIT'S RECENT *WALKER* DECISION, WINCO'S DISCLOSURE CONTAINS EXTRANEOUS AND OVERSHADOWING INFORMATION THAT VIOLATES THE FCRA'S STAND-ALONE DISCLOSURE REQUIREMENT.**

The first issue raised by WinCo on cross-appeal, which the District Court decided correctly, is whether WinCo's disclosure form violates the FCRA. It clearly does. The form provided to Mitchell and other

4

employees is overshadowed by extraneous information and therefore fails to stand alone—it is plainly unlawful.

As a result of the recent decision in *Walker*, in which the Court held in part that very limited information pertaining to investigative consumer reports could be included in the form, WinCo argues that its disclosure form is somehow beyond reproach. However, WinCo's form exceeds what was deemed permissible in *Walker*, as it contains a lengthy description of the nature of its investigative reports that is not "very brief." Further, and putting the investigative report disclosure aside, WinCo's form concludes with an additional disclosure related to record access that closely mirrors what the Court explicitly held to be unlawful in *Walker*. Accordingly, WinCo's form fails to stand alone and thereby violates the FCRA.

### A. The Investigative Report Details Included In WinCo's Disclosure Form Exceed The Limited Disclosure Permitted By *Walker*.

Though this Court recently held in *Walker* that employers may include *limited* investigative report details in their consumer report disclosure form, *Walker* does not amount to a wholesale license for employers to overshadow what must, by law, be a stand-alone disclosure. Here, the extent of investigative report details in WinCo's

form far exceeds the brief disclosure permitted by *Walker*, and thus WinCo's form fails to stand alone.

As detailed in her First Brief on Cross-Appeal, the basis of Mitchell's claim is that WinCo violated the FCRA by providing a consumer report disclosure that fails to stand alone. The law requires employers to make a "clear and conspicuous disclosure" of their intent to procure a consumer credit report, and the disclosure must be made "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i).

The Ninth Circuit has repeatedly held that the statute means what it says: the word "solely" is neither contradictory nor surplusage—it means "solely." *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1175 (9th Cir. 2019) (citing *Syed*). "*Syed*'s holding and statutory analysis were not limited to liability waivers; *Syed* considered the standalone requirement with regard to any surplusage." *Gilberg*, 913 F.3d at 1175. The stand-alone requirement forecloses even the inclusion of related information, which can distract consumers and may be "as likely to confuse as it is to inform." *Id.* at 1176. The purpose of the inclusion "does not override plain meaning" of the statute's stand-alone disclosure requirement. *Id.*

6

at 1175.

The Court reiterated as much on March 20, 2020. *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1087–88 (9th Cir. 2020). In *Walker*, the Court renewed the holdings of *Syed* and *Gilberg* while considering whether the inclusion of information related to investigative reports and record review violates the FCRA.[1] The Court reasoned that, "beyond a plain statement disclosing 'that a consumer report may be obtained for employment purposes,' some concise explanation of what that phrase means may be included" in the disclosure form. *Id.* at 1088. Such limited information would fit within the bounds of the disclosure mandated by Section 1681b(b)(2)(A)(i). The Court thereafter proceeded to analyze each paragraph of respondent Fred Meyer's disclosure form.

On the issue of including an investigative report disclosure and details regarding the scope of the investigation to be performed, the Court disagreed with Walker that such information was categorically impermissible:

> Because investigative reports are a subcategory or specific
> type of consumer report, disclosing that an investigative
> consumer report may be obtained for employment purposes

---

[1] Plaintiff noted the *Walker* case as related to this appeal in her First Brief on Cross-Appeal. (*See* Dkt. 11 at 38.)

does not violate the FCRA's mandate that nothing be included in the disclosure document other than a "disclosure ... that a consumer report will be obtained for employment purposes." *See* 15 U.S.C. § 1681b(b)(2)(A)(i). As long as the information about investigative reports is *limited* to disclosing that such reports may be obtained for employment purposes, and providing *a very brief description of what that means*, the inclusion of such information in a § 1681b(b)(2)(A)(i) disclosure does not run afoul of the standalone requirement.

*Id.* at 1089–90 (emphasis added). Thus, the Court did not find that Fred Meyer's short statement that it may obtain an investigative report violated the FCRA's stand-alone disclosure requirement. *Id.* at 1090.

Though WinCo may believe that the *Walker* decision represents a wholesale endorsement of its inclusion of investigative report details in a consumer report disclosure, the opposite is true. The Court plainly restricted inclusions to a simple disclosure that an investigative report may be obtained and a "very brief" explanation of what that means—this would fit within the disclosure that is actually required by Section 1681b(b)(2)(A)(i). *Id.* at 1090. Anything more than that would be extraneous information with potential to overshadow the mandated stand-alone consumer report disclosure and distract consumers from the necessary purpose of the form. *See id.* at 1088–89.

While the information related to investigative consumer reports

8

included in Fred Meyer's form was limited, WinCo's form far exceeds the bounds set forth in *Walker*. Here, WinCo violated the stand-alone requirement by overshadowing its consumer report disclosure with excessive details about the nature and scope of investigative consumer reports. The first two paragraphs of WinCo's forms contain language very similar to paragraphs one and two of the Fred Meyer disclosure form, both of which the Court found to be permissible—including the language in paragraph one of both forms that the employer "will procure a consumer report and/or *investigative consumer report*." (ER39) (emphasis added); *Walker*, 953 F.3d at 1089–90.

However, while Fred Meyer's third paragraph provides a brief description of what is contained in a consumer credit report, WinCo's third and final paragraph expands into a description of the nature and scope of an investigative consumer report:

> The report may contain information bearing on your character, general reputation, personal characteristics, mode of living and/or credit standing. The information that may be included in your report include [sic]: social security number trace, authorization to work checks, criminal records checks, civil record checks, financial information and credit checks (Experian U.S. Credit), federal record checks, public court records checks, sanction, licensing and certification checks. The information contained in the report will be obtained from private and/or public record sources, including sources

9

> identified by you in your job application *or through interviews or correspondence with your past and present coworkers, neighbors, friends, associates, current or former employers, educational institutions or other acquaintances.*

(ER39) (emphasis added). The length of this paragraph—containing more than half of the words in the entire disclosure form—and the focus on the nature and scope of WinCo's investigative report represents extraneous information that violates the FCRA's stand-alone disclosure requirement.

While WinCo's disclosure (in the first paragraph of the form) that it would procure an investigative report may be permissible, these additional details regarding the nature and scope are hardly part of the necessary disclosure or a "very brief explanation of what that [disclosure] means," especially considering WinCo's form makes no effort to define an investigative report or distinguish between the contents of each report type. *See Walker*, 953 F.3d at 1090. As a reminder, the FCRA contains separate statutory subsections governing the disclosures required for investigative consumer reports. *Compare* 15 U.S.C. § 1681b *with* 15 U.S.C. § 1681d. Though the Court correctly noted that the investigative consumer report is a subtype of consumer reports, this subcategory is distinctly defined and requires its own

disclosures. *Compare Walker*, 953 F.3d at 1089, *with* 15 U.S.C. § 1681a(e), 1681d. This is because investigative reports involve personal interviews with neighbors, friends, or associates, and they cannot include specific credit information obtained directly from creditors or consumers. 15 U.S.C. § 1681a(e).

The District Court was correct in finding that Mitchell adequately alleged a violation the FCRA's stand-alone disclosure requirement—WinCo's form does not consist solely of the required disclosure. (*See* ER22.) The Court's recent decision in *Walker* permits a "very brief" disclosure and explanation of investigative reports, but WinCo's inclusions are not brief. The details included overshadow the required disclosure, distract consumers from what is actually being disclosed, and exceed the bounds of what may be considered the "disclosure" that must stand alone. Accordingly, WinCo's form violates the FCRA, and the District Court's finding should not be overturned.

## B. WinCo's Form Contains The Same Extraneous Disclosure That Supported The Court's Conclusion That The *Walker* Form Was Unlawful.

In addition to overshadowing its disclosure form with details regarding the nature and scope of investigative reports, WinCo also violated the FCRA by including an additional disclosure in its form

11

regarding the right for consumers to obtain more information about WinCo's investigative consumer report. This secondary disclosure closely matches one of the two paragraphs that were held in *Walker* to violate the stand-alone disclosure requirement. Just as in *Walker*, the secondary disclosure made here distracts from the mandated disclosure and results in an unlawful form.

Though the Court held in *Walker* that a limited disclosure regarding investigative consumer reports was permissible, it ultimately concluded that Fred Meyer's form failed to stand alone, due to its last two paragraphs:

> [T]he fourth and fifth paragraphs of Fred Meyer's Disclosure inform the consumer that:
>
>> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.
>>
>> **If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.**
>
> These paragraphs appear to have been included in good faith in order to provide additional useful information about an

applicant's rights to obtain and inspect information about GIS' investigation of, and file about, the applicant. *This language, however, may "pull[ ] the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights" that he has to inspect GIS's files. See Syed*, 853 F.3d at 502; *see also Gilberg*, 913 F.3d at 1175–76 (noting that additional *1091 information about rights under state laws, and references to extraneous documents like a summary of rights under the FCRA, was "as likely to confuse as it [wa]s to inform," and holding that the inclusion of such information violated the standalone disclosure requirement). Thus, while we understand Fred Meyer's reason for providing this information to job applicants, we hold that *it should have been provided in a separate document, because the information cannot reasonably be deemed part of a "disclosure ... that a consumer report will be obtained for employment purposes."* 15 U.S.C. § 1681b(b)(2)(A)(i).

*Walker*, 953 F.3d at 1090–91 (emphasis added). Thus, because the required disclosure failed to stand alone due to the inclusion of these fourth and fifth paragraphs, the Court concluded that Fred Meyer had violated the FCRA. *Id.* at 1091, 1095.

Here, WinCo's form concludes with a statement that closely resembles the additional disclosure in paragraph five of Fred Meyer's form:

> You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative

consumer report from the Company.

(ER39.) The few differences are that: (1) WinCo's secondary disclosure presupposes that an investigative report will be obtained, rather than condition the disclosure on "if" interviews are conducted; and (2) WinCo states that employees must make a written request within a reasonable time, making this second disclosure even longer and more distracting than that which was included in Fred Meyer. (*Id.*)

While it otherwise cited the disclosure form in full in its Second Brief on Cross-Appeal, WinCo conveniently failed to include or otherwise refer to this portion of its form (likely because it knows this portion violates the FCRA, as explained in *Walker*). (*See* Dkt. 23 at 12–14.) However, this secondary disclosure was included in the form, following the extensive details about WinCo's investigative reports. (ER39.) In effect, it serves only to distract or confuse applicants because it muddles the purpose of the form. According to the FCRA, the stand-alone form must disclose to applicants "that a consumer report will be obtained for employment purposes." *Walker*, 953 F.3d at 1091 (citing 15 U.S.C. § 1681b(b)(2)(A)(i)). Instead, this addition informs applicants that they may receive a disclosure of the nature and scope of any investigation performed if they make a written request within some

14

reasonable period of time. (ER39.) This final sentence, equivalent to the (unlawful) fifth paragraph in Fred Meyer's form, is as likely to confuse as it is to inform. *See Gilberg*, 913 F.3d at 1176; *Walker,* 953 F.3d at 1090–91.

With the inclusion of this extraneous disclosure, WinCo has violated the FCRA's stand-alone disclosure requirement. The form provided to Mitchell and other applicants fails to consist solely of the consumer report disclosure, and the District Court did not err in concluding that WinCo's form violated the law.

## II.   WINCO'S VIOLATION OF THE STAND-ALONE DISCLOSURE REQUIREMENT WAS WILLFUL.

While the District Court correctly found that Mitchell had sufficiently alleged an FCRA violation, it erroneously found that WinCo's violation was not willful, resulting in the dismissal of Mitchell's claims. Despite WinCo's arguments to the contrary, and as outlined in the First Brief on Cross-Appeal, the FCRA's stand-alone disclosure requirement is "pellucid"—the provision is unambiguous and not open to interpretation, least of all one that would support combining the consumer report disclosure with extraneous details and another disclosure related to investigative reports. WinCo's form is the result of

15

an objectively unreasonable reading of the word "solely," and it has committed a willful violation of the FCRA under the Supreme Court's *Safeco* standard.

The Supreme Court held in *Safeco* that "reckless disregard" for the obligations created by the FCRA would qualify as a willful violation for the purposes of awarding statutory damages under the Act. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60 (2007); *see also* 15 U.S.C. § 1681n(a). Under *Safeco*, a violation is reckless if the employer's actions are an unreasonable reading of the statute and create a substantially greater risk of violation than the risk associated with a merely careless reading. *Safeco*, 551 U.S. at 69–70. The Supreme Court therein held that Safeco did not recklessly violate the FCRA because its reading of the "less-than pellucid" statutory provision in question was not objectively unreasonable, and no available guidance counseled against Safeco's interpretation. *Id.* at 70.

The FCRA's stand-alone disclosure requirement is crystal clear—this Court has repeatedly held that the statutory language is unambiguous and thus not open to multiple interpretations. *See Syed*, 853 F.3d at 500–01 ("Section 1681b(b)(2)(A) unambiguously requires a document that 'consists solely of the disclosure.'"); *Gilberg*, 913 F.3d at

16

1171 (citing *Syed*'s holding of "clear statutory language"); *Walker*, 953 F.3d at 1087 ("[W]e held [in *Syed* and *Gilberg*] that the standalone requirement was unambiguous and meant what it said."). Simply put, the word "solely" means "solely."

In *Syed*, the Court rejected the defendant's argument that Section 1681b(b)(2)(A)(i) was "less than pellucid" and held that the FCRA "unambiguously bars a prospective employer from including a liability waiver" in a consumer report disclosure document." *Syed*, 853 F.3d at 503–06. The Court further noted that a lack of judicial guidance "does not, as a matter of law, immunize [a party] from potential liability" for willful violation, especially where the statute is unambiguous. *See Syed*, 853 F.3d at 504 (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010)) (alterations in original). The defendant's extraneous inclusions "comport[ed] with no reasonable interpretation" of the word "solely" and the stand-alone disclosure requirement, and thus its interpretation (and resulting violation) of the FCRA was objectively unreasonable. *Id.*

On the question of risk, the Court distinguished potential violations that would be unreasonable without rising to the level of recklessness from interpreting the word "solely" because it is "not

subject to a range of plausible interpretations." *Syed*, 853 F.3d at 505. By somehow interpreting "solely" to allow for extraneous information, employers create an unjustifiably high risk of violating the statute—under *Safeco*, this constitutes reckless disregard of a statutory duty. *See id.* at 506. As it pertains to the stand-alone disclosure requirement and the word "solely," *Syed*'s analysis applies equally "to *any* surplusage" that an employer elects to include in its form. *Gilberg*, 913 F.3d at 1175 (emphasis added).

Here, WinCo's form includes extraneous details about the nature and scope of its investigative reports, along with a second disclosure related to applicants' ability to make a written request for more information. (ER39.) As in *Syed*, WinCo's form represents an unreasonable interpretation of Section 1681b(b)(2)(A)(i). As the Court has held time and again, the word "solely" means "solely." It does not mean "in a document with extensive investigative report details and a disclosure related to the ability of the consumer to obtain more information if he or she submits a written request within an undefined amount of time." WinCo's reading of the statute was not careless, but reckless—its interpretation defied the meaning of the word "solely" and created an unjustifiably high risk of violating the statute. As a result,

WinCo's conduct amounts to reckless disregard of the FCRA's stand-alone requirement and a willful violation under *Safeco*.

In response, WinCo argues that any violation it committed cannot be deemed willful because "the statutory requirement as to whether an investigative consumer report could be combined with the consumer report was not pellucid until March 20, 2020." (Dkt. 23 at 18.) According to WinCo, it cannot be deemed to have acted recklessly because its particular inclusions had not been previously addressed by a court. (*Id.* at 18–20.) This argument fails for two reasons.

First, WinCo mischaracterizes the statutory requirement at issue. To be clear, Mitchell has challenged WinCo's disclosure form under the FCRA's stand-alone requirement—the form must consist "solely" of the required disclosure, and the word "solely" is pellucid and unambiguous. *See Walker*, 953 F.3d at 1087. This requirement is not new, and statutory interpretation is not necessary to understand the word "solely." The Court in *Walker* did not announce a new statutory requirement. Instead, the Court enforced a clear statutory provision as written and held a brief disclosure that an investigative report may be obtained does not violate the FCRA "[b]ecause investigative reports are a subcategory or specific type of consumer report." *Id.* at 1089.

Employers must still present their consumer report disclosures in a stand-alone form, and any additional disclosures or information violates the statute.

Second, WinCo's predictable argument that its violation cannot be willful since no other court had addressed its particular inclusions before is flawed. A lack of judicial guidance does not immunize parties from liability for statutory damages. *See Syed*, 853 F.3d at 504. As similarly noted in Mitchell's First Brief, "[a]n employer 'whose conduct is first examined under [a] section of the Act should not receive a pass because the issue has never been decided.'" *Id.* at 506 (quoting *Cortez*, 617 F.3d at 722). To excuse WinCo or any employer of liability if its inclusions have not been explicitly addressed would reward employers for finding new ways to violate the FCRA's stand-alone requirement. The word "solely" excludes *any* extraneous information—it need not be inversely defined by courts declaring unlawful each of the limitless types of surplusage that employers may attempt to sneak in. If such were the case, all three of the employers in *Syed*, *Gilberg*, and *Walker* would have been excused of liability. *See Syed*, 853 F.3d at 505–06;

20

*Gilberg*, 913 F.3d at 1175, *Walker*, 953 F.3d at 1084, 1090–91. Such a standard is simply unworkable. [2]

The FCRA's stand-alone requirement is pellucid, and the meaning of the word "solely" has not changed since the law was drafted. The language is not susceptible to multiple plausible interpretations. Accordingly, WinCo's interpretation of the law is objectively unreasonable. The form evinces a reckless disregard of the statutory mandate that creates an unjustifiably high risk of violating the FCRA. Thus, under *Safeco* and *Syed*, WinCo willfully violated the statute, and the District Court erred in concluding otherwise.

## CONCLUSION

WinCo's disclosure form violated the FCRA's stand-alone disclosure mandate. The form contains more details regarding the nature and scope of investigative reports than was considered part of the disclosure in *Walker*, and it subsequently includes a second disclosure that the Court plainly held violated the law just months ago.

---

[2] Of course, the *Syed* decision was not available to the employer in *Syed* at the time it drafted its unlawful disclosure. That did not stop this Court from holding that the violation at issue in *Syed* was willful as a matter of law. WinCo's defense that the *Walker* opinion was not issued until March 2020 is similarly ineffective here.

Further, WinCo's choice to include details and a disclosure related to the nature and scope of investigative reports, in light of the pellucid language of the FCRA, constitutes an objectively unreasonable interpretation that creates a greater risk of violation—a willful violation under the *Safeco* standard.

As such, the District Court's dismissal of Mitchell's claim for lack of willfulness should be reversed, and the case should be remanded to the District Court.

Dated: July 1, 2020             Respectfully submitted,

By: /s/ Patrick H. Peluso
Attorneys for Cross-Appellant/Appellee

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C), I certify that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,225 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: July 1, 2020    By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Steven L. Woodrow
Woodrow & Peluso, LLC

*Attorneys for Cross-*
*Appellant/Appellee Gloria Mitchell*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: July 1, 2020          By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Steven L. Woodrow
Woodrow & Peluso, LLC

*Attorneys for Cross-Appellant/Appellee Gloria Mitchell*